SARAH POTTER, (CA SBN 280478)
LAW OFFICE OF SARAH POTTER
214 Duboce Avenue
San Francisco, CA 94103
t. (415) 423-3447
sarah@sarahpotterlaw.com

Attorney for Defendant GOONAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CASEY ROBERT GOONAN,<br><br>    Defendant | Case No.: 24-CR-00414 JSW<br><br>RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM |

    The government's sentencing memorandum overlooks or mischaracterizes crucial facts that this Court should consider in determining a just sentence in this matter.

**I.    MENTAL HEALTH**

    Despite ample documentation in the PSR, the government argues that none of Mr. Goonan's "health struggles" explain his criminal conduct. That is simply not true.

    The government overlooks that Mr. Goonan lived a non-violent, non-criminal life for 33 years. Those who know him best describe how out of character Mr. Goonan's actions were in 2023 and 2024. What explains an educated adult—nurtured in a good home and free of any criminal past—suddenly committing strikingly public crimes? The clear answer is Mr. Goonan's deteriorating mental and physical health.

RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM - 1

The evidence before the Court shows the direct correlation between Mr. Goonan's mental health decline and his actions. The only time Mr. Goonan ever engaged in violent behavior was while he was in the throes of a manic episode and he was not sleeping, not managing his blood sugar, and not thinking clearly. Everything else in Mr. Goonan's past was just words. And even those words were the product of someone whose mental health was deteriorating.

This is not a convenient pretense. Mr. Goonan's mental health decline is well documented in both medical and psychiatric records, as well as observations by family, friends, and colleagues. Mental illness can affect anyone, even someone who was raised in a loving environment and attended prestigious schools. Most significantly for this Court, Dr. Gould, a well-respected psychiatrist, has opined that Mr. Goonan's "risk for future violence is very low when not suffering from symptoms of his psychiatric disorder." See Exhibit B to Defendant's Sentencing Memorandum (Report of Dr. Jeff Gould). Given this unambiguous assessment from a mental-health expert, the government's denial that his condition influenced his behavior is untenable.

Moreover, the government's briefing demonstrates how much Mr. Goonan has been suffering from bipolar disorder. Take, for example, Mr. Goonan's 13 page "academic style" writing explaining that, even though he has a Ph.D., he is not an academic. The government points to this as an example of "self-aggrandizement" by a "narcissistic violent ideologue." What the government leaves unsaid is how clearly this writing aligns with the symptoms of a manic episode: "inflated self-esteem or grandiosity," "flight of ideas," "increased goal-directed activities," and—crucially—"excessive involvement in activities with high potential for painful consequences." See Exhibit B to Defendant's Sentencing Memorandum; Bipolar Disorders - Psychiatric Disorders - Merck Manual Professional Edition (symptoms for Mania, accessed at

RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM - 2

https://www.merckmanuals.com/professional/psychiatric-disorders/mood-disorders/bipolar-disorders#Symptoms-and-Signs_v47623754.)  As is clearly demonstrated, Mr. Goonan continued to experience both mania and depression while unmedicated in Santa Rita Jail.  He is now medicated and his mental state is improving.

## II.     JAIL DISCIPLINARY HISTORY

The government relies on Mr. Goonan's disciplinary history in Santa Rita jail as alleged evidence of prior "criminal conduct."  But Mr. Goonan was disciplined for following established procedures to file a grievance against a deputy who made him feel targeted and unsafe.  See Exhibit A, Grievance Documentation from Santa Rita Jail at USA-8270-8285.  Although deputies reviewing the grievance claimed that body worn camera footage showed that Mr. Goonan's grievance was filed "in bad faith," the footage tells a different story.  Nothing in the footage "contradicts" what Mr. Goonan reported.  See Exhibit B, Body Worn Camera Footage from Santa Rita Jail at USA 8286-8288.  In fact, the footage confirms that the deputy ***did*** threaten to write up Mr. Goonan for asking for soap.  The footage also confirms that the deputy entered his cell and searched his belongings before giving him soap—just as Mr. Goonan stated.  The footage cuts off before the deputy leaves the cell, so the rest of Mr. Goonan's observations were not captured.  As the Court can see from the video, Mr. Goonan appears timid and intimidated throughout his interaction with the deputy.

The footage also captured Mr. Goonan being approached by the deputy in the hallway.  Mr. Goonan was standing stationary in the hallway after having been called to medical when the deputy approached him and asked what he was doing.  Mr. Goonan explained that someone had called him and the deputy forcefully responded, "You can't go on this side man. Give me a fucking break!"  Mr. Goonan calmly responded that he was not going on the other side while the

RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM - 3

deputy started to corral him back towards his pod, yelling "Stay in there!" Mr. Goonan quickly moved back into the pod, into the presence of another deputy. He explained to the other deputy that he was being yelled at because someone called him into the other pod. The first deputy continues to follow him into the pod as Mr. Goonan tries to move away. The exchange continues as the deputy interrogates Mr. Goonan and Mr. Goonan calmly tries to explain what he was doing. Finally, Mr. Goonan returns to his cell. This is exactly what Mr. Goonan reported in his grievance.

In short, Mr. Goonan's complaints were corroborated by the bodycam footage. It is clear that Mr. Goonan's grievance was not made in bad faith. And it is significant that Mr. Goonan was not disciplined for violence, drugs, or any of the more concerning disciplinary matters seen in the jail. Instead, he was disciplined for utilizing proper jail procedures to express his concerns. Just as this Court should not punish Mr. Goonan for his protected speech, it should also not punish Mr. Goonan for filing legitimate complaints through an established process.

### III. ACADEMIC WRITINGS

Mr. Goonan has made no secret that he intends to publish various writings he has done while in custody in Santa Rita jail. Mr. Goonan is a prolific writer and seeks to compile and archive his thoughts to share with others. This is not illegal. Even though Mr. Goonan's sentence should not be increased based on his political ideology, the government's tactic is to ignore the realities of his mental health struggle and try to use his politics alone to paint him as dangerous. The government's sentencing memorandum is a clear example of this. To avoid retaliation for his political beliefs, Mr. Goonan has refrained from publicly publishing this writing thus far.

### IV. CORRESPONDENCE WITH R.A.

Mr. Goonan has and continues to assert the attorney-client privilege as to the contents of letters exchanged with R.A. and the legal services organization where R.A. worked. A magistrate judge independently redacted portions of the letters as attorney-client privileged after a detailed review. Mr. Goonan and the legal services organization have both asserted the privilege. See Dkt. 45. Nevertheless, the government has engaged in unnecessary and drawn-out litigation before the magistrate to pierce the privilege. As of the filing of this memorandum, the matter is still pending before the Hon. Peter Kang. See Dkt. 53, 56. The government has no evidence that Mr. Goonan ever used his correspondence with R.A. to actually exchange information beyond the letters in the government's possession. Once again, the government is trying to punish Mr. Goonan based on words alone.

### V. CONCLUSION

While Mr. Goonan's conduct was serious and deserving of punishment, the government's calls for a severe sentence are misplaced. What Mr. Goonan needs is medication and mental health treatment, both things that can be achieved and monitored out of custody. Despite what the government may think, Mr. Goonan is remorseful, has taken the situation seriously, and recognizes the need for continued treatment to avoid any such episodes in the future. He is committed to maintaining his mental stability and deserves the opportunity to show the Court he can do so. As such, Mr. Goonan respectfully asks the Court to sentence him to no more than 96 months in custody.

Dated: September 18, 2025                    Respectfully submitted,

/s/
_____
SARAH POTTER
Attorney for Casey Goonan

RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM - 5